17-0925 John Major v. Thermo-Tech Windows Council, you may proceed. Good morning, ladies and gentlemen. I'm Grace Martin, and I have the plaintiff at the line, John Major. The issue before you this morning was whether the commission's determination that Mr. Major's employment was not principally localized in the state of Illinois is contrary to the evidence. Mr. Major was hired in Minnesota, was injured in Iowa. We proceeded under the principally localized theory of jurisdiction. In 1986, in the Patton case, this court adopted, after noting that the legislature did not define the term principally localized, adopted the definition of principally localized, suggested in the Model Act for Workers' Compensation. That definition is a person's employment is principally localized in this or another state. Whereas an employer has a place of business in this or such other state, that's requirement number one. And requirement number two, and that the employee being regularly works at or from such a place of business. The court added that this definition focuses first and foremost on the status where the employment relationship is centered. Patton involved an over-the-road truck driver. I'm sorry, he made deliveries. He would drive every morning from his home in Illinois into St. Louis, load his truck with automobiles that he would deliver to dealerships throughout the Midwest, mostly in Illinois. Mr. Patton claimed jurisdiction on two fronts. One, he was a resident of Illinois, and secondly, he drove 48.7% of his annual miles in Illinois. The commission denied his claim, and this court affirmed the commission, stating that he failed to prove that his employment was principally localized in Illinois. However, what this court cited was the so-called transient employment rule that Professor Larson stated. It was quoted in the Patton decision, which states that when an employee spends a considerable amount of time in a state, that alone is insufficient to support a claim that the employment is principally localized in that state. Well, where was this contract formed? It wasn't formed in Minnesota? Mr. Major? Yes, it was formed in Minnesota. He gets his paychecks from Minnesota, correct? That's right. What are the initiatives of quote-unquote principally localized in Illinois that you rely on? He's domiciled here. He spends 25 to 30% of his expenses are generated here, and of the 70,000 miles he travels a year for his employer, 25 to 30% of them are spent in Illinois. Anything else? Yes, going back to the amount of miles and the amount of time spent in Illinois is not that important. Going back to what this court said, Patton, principally localized definition focuses first and foremost on where the employment relationship is centered. I cite in my brief, and I cited this before the commission, and they didn't discuss it, is the associate corporation case. But to answer your question, Justice Hoffman, what are the indications that it's principally localized? I would refer you to the Cowper case. In that case, this court set up a five-factor test to determine whether an employment is principally localized in Illinois. Factor number one is the center from where the employee worked. So let's go back to Patton. In Patton, we define the term principally located. A person's employment is principally located in this or another state where one, the employer, has a place of business in this or such other state, and he regularly works at or from such a place of business. Now, that doesn't apply to your client. Or if clause one, foregoing, is not applicable, he is domiciled and spends a substantial part of his working time in the service of the employer in this or in such other state. That's the definition we gave for principally located. In Crowder, we were asked to determine the situs of the employment relationship and then gave the five-factor test. So if we go back to the definition we gave in Patton, tell me what it is you say satisfies the second portion of the definition of principally located. First, I must respectfully disagree with you as to a place of business in Illinois. The employers that bought a policy of workers' compensation insurance, they specifically listed Mr. Major's home as its place of business in Illinois. He was their only employee in Illinois. Now, looking at the Associates Court case, where this court is one of those rare occasions where they reverse the commission on a mere question of fact, the insurance executive in that case worked 26 percent of the time at home. Mr. Major worked 30 percent of his time at home. They both received phone calls at home, received correspondence at home. The insurance executive held an occasional meeting. Mr. Major, in essence, operated a branch sales office for his employer in his home. He had a dedicated office area. His garage was full of their products. And as opposed to the two truck drivers, he didn't go home only to sleep. He actually worked at home. And that was the big distinguishing factor that led this court to reverse the commission in the Associated Court case. The other two factors are... Are you quoting from Calgary again? I'm sorry? Are you quoting from Calgary? Which case are you quoting from now? The five factors? Yeah. Calgary. Okay. So we can give you argument, you know, due consideration. I'm looking at Calgary myself. I want to hone in on a couple of points. Factor two, as you have there, is the source of remuneration to the employee. That's clearly in Minnesota, isn't it? Yes. Where the employment contract was formed, you've already testally acknowledged it was formed in Minnesota, correct? Agreed. Four, existence of a facility from which the employer received his assignments and is otherwise controlled. Undisputably, that's Minnesota. He receives the territorial assignments from Minnesota. He always reports to somebody in Minnesota. He's provided with a car with Minnesota plates. He's given a cell phone from Minnesota. Clearly, factor four favors the Minnesota scientist, doesn't he? I think it's different on points two and four. All right. So where does he get his assignments from? He was given his assignment from Minnesota. He's given at least four states. And then there's no evidence in the record of daily direction and control like the two truck drivers who have to call the dispatcher every single day. But he reports back to the headquarters, so to speak, in Minnesota. He reports, but he's not controlled from them. Now, if you look at the associate's court where this court reversed the commission, that guy, the insurance executive, was under so much pressure from home office that would be controlled that he had a fatal heart attack because of it. This court found significant that in the year before he made 37 trips to home office. That was not a sufficient amount of control to defeat the insurance executive's widow's claim. In this case, Mr. Major Lee had to go to Minnesota once a year to attend a sales conference, and he had to attend an occasional trade show. When you have 37 forced visits to home office in one year, and this court and the associates said that was not enough to dismiss, to defeat his claim, I can't see how one could. The second point, the remuneration. Yes, Mr. Major received his check from Minnesota. The insurance executive operated out of a desk in the master bedroom of his home in Omaha. I'm sure he didn't write his own paycheck. I'm sure he came from home office in Indiana. And then the fifth factor is the facility where the voyage travels begin and end. The two truck drivers had that they began and ended in a terminal. So Calgary would stop at home.  The insurance executive would leave his home, go do his trip, return home. Same thing with Mr. Major. He would work at home on Monday, part Tuesday, spend two, three nights on the road, come back on Friday, work some more. The test that Professor Larson talks about when an employment moves, it's a localization mistake where the contract of hire is made, is that the regular employment becomes so centralized and fixed in the foreign state, which is the only way in this case, that any return to the original state of Minnesota is casual, incidental, and temporary. Let me ask you a very poignant question. I think that we have cases in our court as well that have opined, admittedly, this is one of the most difficult areas of the law that we have in Congress. When you talk about weighing factors, you can make an argument, a plausible argument that you have on all these factors, and you can see the commission makes a plausible conclusion the other way. But this is what it turns out always, is an opposite conclusion to that found by the commission clearly apparent. That's a pretty tight burden when you're talking about these contracts. Clearly apparent that the opposite conclusion would have been correct. I agree with you that it's a tough case. But I point to Associates' court case once again. I believe the factors in this case in support of the idea that the employment is principally localized and normalized are stronger than those in Associates, especially the purchase of a policy of workers' compensation insurance, listing his house as its place of business. And to your point, there is a specific line from the Associates' court case, which I quoted in my brief, and that line is, any other conclusion is not supported by the evidence. I will ask that you reverse the finding of the commission and revamp the case with directions. Thank you. Thank you, counsel. You have time under five. Counsel, you may respond. Good morning. May it please the Court? Justin Cantor on behalf of the defendant. Counsel. Your Honors, Armchair McClure has concluded that Illinois lacked jurisdiction over Plinkett, in this case involving his injury in Iowa. The commission unanimously adopted and affirmed the arbitrator's decision in its entirety. The circuit court began to affirm the commission's decision. Do we really care what the circuit court did? We care a lot. To review the commission. Correct. So today we are asking that you affirm the commission's decision in its entirety. Isn't most of his business done in Illinois that he keeps emphasizing? Isn't this what he basically operates on? No. This Plinkett was a traveling employee. He had a five-state territory at the time of his injury. We testified that his territory depended on whatever assignments were given to him by his bosses in Minnesota. So although he did work, I think the testimony was 25 to 30 percent of the time, being in Illinois traveling an additional 25 percent of the time at his home office. This employee was indeed a traveling employee whose obligations spanned really throughout the Midwest. He would stay overnight in other states? He moved around? Correct. Correct. So he would indeed stay overnight. We testified that there were times that he would have to stay overnight, whether it be in Illinois or another state, and that there would be consecutive nights that he would be staying overnight. So it was not as though he was traveling. He's got to live somewhere. He lived in Illinois, but he was traveling all over the Midwest? Correct. Exactly. And it's not as though after one day he would immediately return back to Illinois. As you suggested, that there would be successive days where he would be either somewhere in Illinois or somewhere else in his multiple-state territory. And that kind of dovetails to another point that counsel had alluded to, and that was relating to the amount of time that the plaintiff spent in Illinois. So whether it's 25 to 30 percent traveling, an additional 25 percent at his home office, it's important to consider that the court in Calgary acknowledged that that plaintiff also spent a considerable amount of time in Illinois, and yet the court denied that there was Illinois jurisdiction. Likewise, in the Batten case, as counsel had said, the court concluded that the plaintiff spent 48.7 percent of his time working in Illinois, and yet the court concluded that the Illinois did not have jurisdiction over his injury. Justice Hudson, you touched on a lot of the factors of the Calgary test, and the Calgary test really is the sum of the case in this case. And I think it's important to also mention that counsel has related that to the Associates General case from 1986, but the Associates General case did not apply in the five-factor Calgary test. Instead, the five-factor test in Calgary was developed in the year 2000, and to the extent that counsel has suggested that the court being Associates Corporation, the Associates Corporation of North America case did not address all of the five factors in the Calgary test, that shouldn't be surprising because the five-factor test had not yet been developed. But with regard to some of the specific factors of the Calgary test, I just wanted to emphasize a few of them. We've already discussed the fact that HX came from Minnesota. The employee was hired in Minnesota. He could have returned to Minnesota already a year from HNC. He doesn't have to go over those. He's already an artist. Yeah, fair enough. And again, I just want to emphasize, at no point did Hunt have a supervisor in Illinois. At all times, Plaintiff's supervision came from Minnesota. Whether it was his direct supervisor or later the owner of the company, his supervision was coming from Minnesota. To the extent that it's disputed whether or not he was controlled in – whether he actually was controlled from anyone in Minnesota just because Plaintiff was in a position to set his own schedule, I'd like to emphasize that the Plaintiff testified that his duties depended on whatever assignments were given to him from his employer. And his employer would also schedule trade shows at which Plaintiff would be dependent. You know, the determinations of trade shows he would need to attend was made in Minnesota. So this is somebody where his assignment was, hey, go out and make a bunch of cold calls. You work for us. You decide where you're going, what you're doing. That's not the case. You're saying Minnesota specifically assigned his territories and who he was supposed to call, is that correct? Correct. So even though in any terms the Plaintiff testified that he could set his own schedule, you know, who is a counselor, what states is a counselor in, that was decided in Minnesota. Sorry, I don't want to rehash anything, but again, you had mentioned that the Plaintiff had a – his work cell phone was a Minnesota number. His car was a Minnesota car, car license plates. Plaintiff had testified that he was provided a laptop. His laptop, he testified, enabled him to connect back to his home office, which was in Minnesota. The final point that I'd like to make relates to Plaintiff's reliance on the Associates Corporation of North America case. Again, the Plaintiff has tried to characterize himself like a business manager in the Associates Corporation of North America, but there's a big difference between the business manager in Associates Corporation versus the Plaintiff in this case. As counsel has acknowledged, the Larson – Professor Larson's treatise is relied on in all of these cases. Professor Larson has specifically grouped traffic salesmen and – sorry, Professor Larson has specifically grouped traffic salesmen and truck drivers like those in Patton and in Cotter, and so it's appropriate for us here to continue to group the Plaintiff with the truck drivers with the ultimate conclusions in Patton and Cotter and unlike the Associates Corporation where we were dealing with a business manager who it was acknowledged helped business meetings in his home office. He managed people from his home office in Illinois, and those facts are very distinguishable from our facts here. Thank you, counsel. Counsel may reply. Counsel's argument seems to suggest that Professor Larson is saying that traffic salesmen, truck drivers, I think he listed construction and flying as other transient occupations, don't qualify for employment in Illinois for under the principally localized theory. The transient employment theory is strictly that an employment doesn't become principally localized in this state solely on the basis of the amount of time spent in this state. Patton drove 48.7% of his miles in Illinois, but his employment relationship wasn't centered in Illinois. The deceased in Associates Corp spent only 26% of his time in Illinois, and so why was his case found to be compensable by this court? Because this court did not look at the amount of time you spend in this state. It looks at what you do in this state, and most importantly, is your employment relationship centered in this state? As to the issue of supervision, the insurance executive in Associates Corp didn't own the insurance company. He reported to someone in Indiana. They supervised his activity. They supervised it to the extent that he had a fatal heart attack, wondering if he was going to be able to turn this insurance company in Providence, Rhode Island, around. Everybody has a boss unless you own the company. The Calgary Factor No. 4 talks about direction and control. The truck drivers don't do anything until they check in with their dispatcher, who controls each and every move that they make. The petitioner in this case was given four states to take care of it. Take care of our accounts, and call the Office of New Business if you can. The deceased in Associates Corp supervised a number of insurance companies. Sure, supervising other insurance companies is a higher-level job than maybe supervising accounts of laundry yards and building supply stores, but it's still the same thing. The employment relationship became principally localized in Illinois. He worked for Illinois here, and he did some work in his home office. 30% of the time, as opposed to 26% of the time, for the deceased insurance executive. And just a minor correction, Calgary said that he drove less than 10% of his annual miles in Illinois. He would receive less than 25% of his assignments at home. In Calgary, one of the initia of the status of employment was where the contract was formed. That's not even relevant to where the employment is principally located. The Act specifically says that we can acquire jurisdiction in one of three ways stated in the disjunctive, not the conjunctive. If the contract for hire was made in Illinois, which it wasn't in this case, that's wholly irrelevant now. If the accident occurred in Illinois, it didn't. Or if the claimant's employment was principally located in Illinois. So it occurs to me that if principally located is a different basis for determining jurisdiction than where the contract of hire was entered into, then Calgary's reference to the place of the entry of the contract of hire as being determinative of status of employment is totally irrelevant if you're analyzing under principally located. I agree. The only reason the third method, principally localized, came into the discussion in this case and the three cases cited here today is because they all involve contracts of hire made out of state and injuries out of state. That's why we're saying that the state of Illinois acquired jurisdiction over this claim under the principally localized theory. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement in a written dispositional issue.